UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KHADGA BAHADUR LIMBU,

Petitioner,

v.                                                      CAUSE NO. 3:26cv419 DRL-SJF

MARKWAYNE MULLIN, SAMUEL
OLSON, and BRIAN ENGLISH,

Respondents.

OPINION AND ORDER

Immigration detainee Khadga Bahadur Limbu, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondents answered the petition, and Mr. Limbu replied. The court now grants the petition.

As a preliminary matter, Mr. Limbu was ordered to show cause why every respondent but the Miami Correctional Facility Warden, the only respondent who exercises "day-to-day control" over him, should not be dismissed under *Kholyavskiy v. Achim*, 443 F.3d 946 (7th Cir. 2006). Relying on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the court of appeals there concluded the proper respondent in an immigration habeas case challenging the constitutionality of a petitioner's confinement is the warden of the facility where the petitioner is being held, not a supervisory official who has the authority to free the petitioner. *See also Doe v. Garland*, 109 F.4th 1188, 1192 (9th Cir. 2024); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3rd Cir. 2021); *Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir.

2000). Mr. Limbu does not oppose the dismissal of the non-custodial respondents but requests that they be dismissed without prejudice. For the sake of clarity, the court refers to the responding party as the Warden from this point on.

Mr. Limbu is a citizen of Bhutan who was born in Nepal in 1994. He came to the United States in 2014 as a refugee and adjusted his status to lawful permanent resident in 2016 [6-1]. In 2021, Mr. Limbu was convicted of several charges relating to the sexual abuse of a minor and sentenced to probation for four years and required to register as a sex offender. He was arrested pursuant to a warrant by immigration officials at his home on March 28, 2025, and transferred to the custody of United States Immigration and Customs Enforcement (ICE) for removal proceedings. He was issued a notice to appear, charging him with being removable under 8 U.S.C. § 1227(a)(2)(E)(i), for being convicted of a crime of child abuse. On May 19, 2025, an immigration judge ordered him removed to Nepal or in the alternative to Bhutan. He waived his right to appeal.

Mr. Limbu filed this habeas petition on March 30, 2026, arguing his continued detention, then exceeding ten months after his removal order became final, was unlawful because his removal was not reasonably foreseeable.[1] He argued his removal was not reasonably foreseeable because he had signed paperwork to facilitate obtaining travel documents, but ICE had been unable to obtain any.

In answering the petition, the Warden (though his federal counsel) submitted a declaration from a deportation officer dated May 1, 2026, stating that ICE Enforcement and

---

[1] This is Mr. Limbu's second habeas petition. His first was denied as largely premature. *See Limbu v. Noem*, No. 3:26cv69, 2026 WL 456605 (N.D. Ind. Feb. 18, 2026).

Removal Operations (ERO) intends to remove Mr. Limbu to Nepal or, in the alternative, to Bhutan [6-2]. He attests that ICE ERO submitted a travel document request to the government of Bhutan around March 11, 2026.

In reply, Mr. Limbu argues the government's response does not establish that his removal is reasonably foreseeable because there is no evidence that any efforts had been made to effectuate the removal until nearly ten months had passed following his final order of removal. The government provides no information about what considerations the Bhutanese government makes when assessing these requests for travel documents for refugees, no information about how long it is expected to take for the Bhutanese government to process the application, and no estimation about how much longer the process might take. He further argues efforts to remove him to Bhutan are unlikely to be successful because his family had been forcibly displaced from there due to ethnic persecution before he was born, so he has never lived there. He asserts he has no identity documents tying him to Bhutan, and he fears being sent there.

The Warden first argues that the court lacks subject matter jurisdiction over Mr. Limbu's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For reasons given before, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits of the petition, the court follows the analysis set forth in *Zadvydas*. By statute, noncitizens who are subject to a final order of removal must be detained for a period of 90 days, during a "removal period." 8 U.S.C. §§ 1231(a)(1), (a)(2).

This removal period begins on the latest of three events: (1) the date the removal order becomes administratively final, (2) the date of a reviewing court's final order if the noncitizen seeks judicial review and the court orders a stay of removal, or (3) upon the noncitizen's release from non-immigration confinement. 8 U.S.C. § 1231(a)(1)(B). Mr. Limbu's removal period began on May 19, 2025, when the removal order was issued and he waived his right to appeal. *See* 8 U.S.C. § 1101(a)(47)(B)(ii); 8 C.F.R. § 1241.1(b). It ended around August 17, 2025.

Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[2] No one contests that Mr. Limbu's criminal conviction allows him to be detained beyond the removal period.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all

---

[2] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. To avoid a constitutional due process problem with § 1231(a)(6), including for a noncitizen who remains in the country after being ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

The law materially defers this difficult judgment to the Executive Branch for a total six-month period, as detention then is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. This period for Mr. Limbu ended approximately November 19, 2025. From there, the court has the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.* at 699; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. In this, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations—are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the

individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700.

The petitioner bears the initial burden. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). If he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701 (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

Mr. Limbu's detention has passed the six-month presumptively reasonable period of detention, so the inquiry turns to whether he provides good reason to believe his removal is not significantly likely in the reasonably foreseeable future. He need not show that deportation is "impossible" or prove "the absence of *any* prospect of removal," *Zadvydas*, 533 U.S. at 702, yet he must typically offer something more than the mere passage of time. Though Congress may have "doubted the constitutionality of detention for more than six months," the passing of this presumptive six-month period "does not mean that every alien not removed must be released." *Id.* at 701. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) ("detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process"). That said, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Zadvydas*, 533 U.S. at 701.

Mr. Limbu provides good reason to believe his removal is not reasonably foreseeable with the long span of no action being taken to remove him coupled with the difficulties he identifies with obtaining travel documents from Bhutan based on the circumstances of his birth. In response to this showing, the government believes removal is reasonably foreseeable because a travel document request was submitted to Bhutan around March 11, 2026. Why it took ten months for the government to seek travel documents to remove a convicted sex offender no one explains.

At this point, Mr. Limbu has been detained for nearly fourteen months, more than twice the presumptively reasonable period of detention identified in *Zadvydas*. Based on that long period of detention, the foreseeability of Mr. Limbu's removal must be closer than if he had filed right after the six-month *Zadvydas* period ended. The Warden has not made the necessary showing. A ten-month timeframe for submitting a first travel document request could be reasonable if there were obstacles or other difficulties in compiling the request. The Warden identifies none. Further, the request has been pending for four months now, with no update that any action has been taken. Bhutan does issue travel documents. *See Karki v. Jones*, No. 1:25cv281, 2025 WL 1638070, 3 (S.D. Ohio June 9, 2025) (noting that Bhutan had issued travel documents for three petitioners who were stateless Nepali-speaking Bhutanese refugees from the Lhotshampa ethnic minority). But Bhutan also does not respond to every travel document request. *See Mahmud v. Warden River Corr. Ctr.*, No. CV 1:26-0107, 2026 WL 1765602, 3 (W.D. La. May 29, 2026), *report and recommendation adopted,* No. CV 26-0107-P, 2026 WL 1765180 (W.D. La. June 18, 2026) (no response from Bhutan to travel document request for potential third country removal for citizen of Bangladesh). If this were earlier in

7

Mr. Limbu's detention, the government might have more leeway in awaiting a response. Within the context of a 14-month detention, the government has not shown a likelihood of Mr. Limbu's removal in the reasonably foreseeable future, or that, given some reasonable time period, traction may be gained. Therefore, the respondent must release Mr. Limbu under *Zadvydas*, under appropriate conditions of supervision. Efforts to remove him may continue while he is released.

For these reasons, the court:

(1) DISMISSES WITHOUT PREJUDICE Markwayne Mullin, Secretary of the Department of Homeland Security, and Samuel Olsen, Field Office Director, Chicago Field Office, Immigration and Customs Enforcement;

(2) GRANTS the petition for writ of habeas corpus [1] and ORDERS the respondent to release Khadga Bahadur Limbu on appropriate conditions of supervised release and to certify compliance with this order by filing a notice with the court by **July 20, 2026**; and

(2) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release.

SO ORDERED.

July 17, 2026                          *s/ Damon R. Leichty*
                                       Judge, United States District Court

8